# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

ANTHONY JARAMILLO,

     Plaintiff,

v.                                     Civil No. 04-853 WJ/ACT

STATE OF NEW MEXICO,
DEPARTMENT OF TRANSPORTATION,

     Defendant.

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court pursuant to Defendant's Motion for Summary Judgment [Docket No. 22]. Having reviewed the submissions of the parties and being fully advised on the applicable law, the Court finds the motion shall be granted in part and denied in part except for Plaintiff's contract related claims which the Court will defer ruling on until the additional court ordered briefing is complete.

## BACKGROUND

Plaintiff was employed by the State of New Mexico Department of Transportation (DOT). He worked as a highway maintenance worker. At some point during his employment, Plaintiff was injured in a serious car accident. Plaintiff alleges that Defendant began to discriminate against him following these injuries. On March 19, 2003, Plaintiff made an internal complaint with the DOT Equal Opportunity office. He complained that a coworker made comments about

pornographic magazines and lotion and stated that Plaintiff would be good "for that" because his hands were soft. The co-worker then pulled a pipe from the ground and said "his is twelve inches" and made a demonstration in front of his groin. In this internal complaint, Plaintiff also complained that three years ago someone had placed naked pictures of men inside his locker. During his deposition, Plaintiff testified that it was not uncommon for workers in the DOT to make off-color jokes at a construction site. Plaintiff was offended by the comment about his soft hands because he had been off work due to his injury.

Sometime in March or April of 2003 after Plaintiff made his internal complaint, he was called into a meeting and confronted by his supervisor and co-workers. His co-workers made threatening and derogatory remarks to Plaintiff about his capacity to do his job and his filing of the internal complaint. The meeting lasted for over an hour.

Plaintiff resigned from his employment in August 2003. Plaintiff alleges that he was forced out of his job from the pressure of other employees following him around, watching him, and reporting his conduct back to his supervisor. Between March 2003 and the time of his resignation, Plaintiff worked full time, was never formally reprimanded and did not receive any formal discipline. Plaintiff was never demoted and never received a reduction in his pay. However, he attempted to apply for a promotion, but his supervisor did not allow him to apply. When he made efforts to apply anyway, he was given the runaround and his application as accepted only reluctantly by someone in personnel who had contact with Plaintiff's supervisor. Before being allowed to interview for the promotion, Plaintiff was required to speak with someone in charge of safety. In addition to problems applying for a promotion, Plaintiff attempted to transfer to other crews, but was never transferred. Plaintiff was threatened with

2

involuntary termination twice with one of these times being in writing, but Defendant never completed the process for involuntary termination.

On November 12, 2003, after Plaintiff resigned his employment, Plaintiff filed a charge of discrimination with the EEOC (hereinafter referred to as the "charge"). In his charge, Plaintiff alleged that he was sexually harassed when a male co-worker directed inappropriate comments toward him. His charge also alleged that he was retaliated against after he reported this incident. In addition to alleging sexual harassment, Plaintiff's charge included an allegation that he was discriminated against on the basis of a disability, that he was denied reasonable accommodation, and that he was harassed for his injury and forced to leave his job.

On July 28, 2004, Plaintiff filed his Complaint in this case alleging national origin discrimination under Title VII in Count I, retaliation under Title VII in Count II, and state law claims for breach of contract and breach of the implied covenant of good faith and fair dealing in Counts V and VI.[1] Defendant filed the instant motion for summary judgment arguing that it is entitled to summary judgment (1) on Plaintiff's claim for national origin discrimination because Plaintiff failed to exhaust that claim in his EEOC charge; (2) on Plaintiff's retaliation claim because Plaintiff filed his EEOC charge after he resigned from his employment, because his internal complaint was not based on a reasonable, good faith belief that the incident complained of constituted unlawful discrimination, and because he suffered no adverse employment action; (3) on Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims because there is no evidence of an express or implied employment contract, and because

---

[1]There are no Counts III or IV in the Complaint.

representations that an employer will provide an environment free from discrimination cannot

serve as the basis for a breach of contract claim.

**LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c). The burden of showing an absence of a genuine issue of material

fact falls upon the moving party. See Adler v Wal-Mart Store, Inc., 144 F.3d 664, 670 (10th Cir.

1998). However, when the moving party does not bear the ultimate burden of persuasion at trial,

it may satisfy its burden at the summary judgment stage by pointing out to the Court that there is

an absence of evidence to support the nonmoving party's case. Celotex Corp. v Catrett, 477 U.S.

317, 322-23 (1986); Adler, 144 F.3d at 671. The nonmoving party must then go beyond the

pleadings to set forth specific facts showing that there is a genuine issue for trial sufficient to

support a verdict for the nonmovant. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248-49

(1986). All reasonable factual inferences must be drawn in favor of the nonmoving party.

Seamons v Snow, 206 F.3d 1021, 1026 (10th Cir. 2000); Curtis v Oklahoma City Public Sch. Bd.

of Ed., 147 F.3d 1200, 1214 (10th Cir. 1998). However, the nonmovant must establish, at a

minimum, an inference of the presence of each element essential to the case. Bausman v

Interstate Brands Corp., 252 F.3d 1111 (10th cir. 2001).

**DISCUSSION**

I.      PLAINTIFF'S CLAIM IN COUNT I UNDER TITLE VII FOR NATIONAL ORIGIN
        DISCRIMINATION

Plaintiff's response to Defendant's motion for summary judgment does not dispute that Plaintiff's EEOC charge did not exhaust a claim for national origin discrimination and stipulates to the dismissal of this claim. Accordingly, Defendant is entitled to summary judgment on Count I of the Complaint.

II.   PLAINTIFF'S CLAIM IN COUNT II FOR RETALIATION UNDER TITLE VII

To survive summary judgment on a retaliation claim, Plaintiff bears the initial burden of showing (1) that he engaged in protected activity; (2) that the Defendant took adverse employment action against him; and (3) that there exists a causal connection between the protected activity and the adverse action. <u>Tran v. Trustees of the State Colleges in Colo.</u>, 355 F.3d 1263, 1266 (10th Cir. 2004). Once Plaintiff makes this showing, Defendant must articulate a facially legitimate, nondiscriminatory reason for the adverse employment action. <u>Wells v. Colo. Dep't of Transp.</u>, 325 F.3d 1205, 1212 (10th Cir. 2003). Plaintiff must then respond by showing that the Defendant's asserted reasons for the adverse action are pretextual. <u>Id.</u>

Defendant argues that it is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff failed to show a prima facie case of retaliation. Specifically, Defendant urges that Plaintiff did not engage in protected activity and that Plaintiff has no evidence he suffered an adverse employment action. Defendant does not make any further argument in support of summary judgment. Thus, if Plaintiff shows he engaged in protected activity and suffered an adverse employment action, Defendant is not entitled to summary judgment on the retaliation claim.

A.   <u>Protected Activity</u>

5

Filing an EEOC claim qualifies as protected activity. Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir.1999).  However, Plaintiff did not file his EEOC charge until after he resigned from his employment, and he does not allege that Defendant took any adverse action against him after he filed his EEOC charge.  Accordingly, his filing of an EEOC charge cannot be the protected activity to meet the first prong of his prima facie showing.

An employee's informal complaints to superiors constitute protected activity for purposes of a Title VII retaliation action.  O'Neal v. Ferguson Const. Co.,237 F.3d 1248 (10th Cir. 2001). In order for an informal complaint to support a retaliation claim, Plaintiff must have had a reasonable, good faith belief that the conduct complained of was unlawful.  Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 269 (2001); Crumpacker v. Kansas Dept. of Human Resources, 338 F.3d 1163, 1171 (10th Cir. 2003).  In Breeden, the Supreme Court dismissed a retaliation claim when "[n]o reasonable person could have believed that the . . . incident [complained of]   . . . violated Title VII's standard."  532 U.S. at 271.  However, an actual violation is not required to maintain a retaliation claim under Title VII. Crumpacker, 338 F.3d at 1171 n. 5 (citing Love v. RE/MAX of Am., Inc., 738 F.2d 383, 385 (10th Cir.1984)).

Defendant contends that Plaintiff's internal complaint was not protected activity because it did not allege an actual violation of Title VII, and Plaintiff did not have a reasonable, good faith belief that it alleged a violation of Title VII.  As noted above, Plaintiff's internal complaint alleged that a co-worker made comments about pornography, lotion and Plaintiff's soft hands.[2]  While

---

[2]The internal complaint also alleged that someone had placed pictures of naked men in Plaintiff's locker three years earlier.  However, it would not have been reasonable for Plaintiff to believe that an incident that occurred three years earlier was actionable under Title VII. Accordingly, this portion of the internal complaint cannot form the basis of Plaintiff's Title VII retaliation claim.

6

this may not allege an actual Title VII violation, a reasonable person could believe that the conduct complained of was a violation of Title VII.  Thus, it cannot be said as a matter of law that no reasonable person could have believed that comments about pornography, lotion and soft hands violated Title VII, and Plaintiff has met the requirement of showing that he engaged in protected activity for purposes of making a prima facie showing of retaliation.

        B.    <u>Adverse Employment Action</u>

The Tenth Circuit liberally defines the phrase "adverse employment action," <u>Sanchez v. Denver Public Schools</u>, 164 F.3d 527, 532 (10th Cir. 1998), and takes a case-by-case approach in determining whether a given employment action is adverse.  <u>Gunnell v. Utah Valley State College</u>, 152 F.3d 1253, 1264 (10th Cir. 1998).  In this circuit, conduct that will be considered an adverse employment action includes but is not necessarily limited to conduct that results in "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  <u>Hillig v. Rumsfeld</u>, 381 F.3d 1028, 1032-33 (10th Cir. 2004); see also <u>Tran v. Trustees of the State Colleges in Colo.</u>, 355 F.3d 1263 (10th Cir. 2004); <u>Wells v. Colorado Dep't of Transp.</u>, 325 F.3d 1205, 1213 (10th Cir. 2003);. <u>Garcia v. Pueblo Country Club</u>, 299 F.3d 1233, 1241 (10th Cir.2002); <u>Aquilino v. Univ. of Kan.</u>, 268 F.3d 930, 934 (10th Cir. 2001). There are deprivations less harsh than dismissal that will be considered adverse or detrimental employment actions. <u>Lybrook v. Farmington Mun. Schools Bd. of Educ.</u>, 232 F.3d 1334, 1340 (10th Cir. 2000). However, such actions by an employer are adverse employment actions only when they have a demonstrable adverse impact on future employment opportunities or when they adversely affect an employee's job position.  See <u>Berry v. Stevinson Chevrolet</u>, 74 F.3d 980, 986 (10th Cir. 1996);

McKenzie v. Atlantic Richfield Co., 906 F.Supp. 572, 575 (D. Colo. 1995).  In the retaliation context, the Eighth Circuit has defined an adverse employment action as adverse treatment that would reasonably deter an employee from engaging in protected activity.  See Ray v. Henderson, 217 F.3d 1234 (8th Cir. 2000).

Plaintiff alleges that he suffered adverse employment action (1) in the form of retaliatory harassment during a meeting with his supervisor and co-workers in March or April of 2003; (2) when Defendant twice threatened Plaintiff with involuntary separation in 2003; (3) when Defendant interfered with Plaintiff's attempts to apply for a promotion; and (4) by constructively discharging Plaintiff from his employment.

   1.  Retaliatory Harassment

Retaliatory harassment may be an adverse employment action when "supervisory or management personnel either (1) orchestrate the harassment or (2) know about the harassment and acquiesce in it in such a manner as to condone and encourage the co-workers' actions." Gunnell v. Utah Valley State College, 152 F.3d 1253, 1265 (10th Cir. 1998).  In order for such harassment to be an adverse employment action, however, it must be sufficiently severe.  Id. at 1264. While the Tenth Circuit has not addressed what would constitute sufficiently severe retaliatory harassment to rise to the level of an adverse employment action, cases involving sexual harassment and racial harassment under Title VII clarify that harassment is actionable only when it is sufficiently severe or pervasive to alter the terms, conditions, or privilege of employment, and create an abusive environment.  See Meritor Sav. Bank, F.S.B. v. Vinson, 477 U.S. 57, 67 (1986); Stinnett v. Safeway, Inc., 337 F.3d 1213 (10th Cir. 2003); Trujillo v. Univ. of Col. Health

Sci. Center, 157 F.3d 1211 (10th Cir.1998).  The same standard logically applies to cases alleging retaliatory harassment.

There is no "mathematically precise test" for determining whether conduct is sufficiently severe or pervasive to create an abusive environment.  Turnbull v. Topeka State Hospital et al, 255 F.3d 1238, 1243 (10th Cir. 2001) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993)).  Some factors to be weighed include "the frequency of the discriminatory conduct; its severity;  whether it is physically threatening or humiliating, or a mere offensive utterance;  and whether it unreasonably interferes with an employee's work performance."  Id. (citing Harris, 510 U.S. at 23).  Because frequency is only one of the factors to consider in the analysis, a single, isolated incident may be actionable harassment if the conduct is sufficiently severe.  See, e.g., Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1072 (10th Cir. 1998) (allowing claim based on single incident).  The harassing conduct must be both objectively and subjectively abusive.  Lockard, 162 F.3d at 1071.

In Lockard, the plaintiff was a waitress at a Pizza Hut.  On a single occasion, a male customer grabbed her by the hair.  When she complained to her supervisor and asked that he assign someone else to wait on the customer, he directed her to continue to wait on the customer.  When she went back to the customer's table, the customer grabbed her hair again, pulled her to him, grabbed her breast, and placed his mouth on her breast.  The plaintiff left her employment that evening.  The Tenth Circuit found that this conduct was sufficiently severe to support the plaintiff's claim because it was both physically threatening and humiliating.

In this case, Plaintiff alleges that, after he made his internal complaint, he was called into a meeting in his supervisor's office with his supervisor and co-workers present.  According to

9

Plaintiff's deposition testimony, the meeting included Plaintiff's supervisor, Sammy Montano, and five of Plaintiff's six co-workers (the sixth co-worker had the day off).  The only topics discussed at the meeting were Plaintiff's ability to do his job in light of his injuries and Plaintiff's complaint of sexual harassment against two of his co-workers.  Plaintiff's supervisor asked Plaintiff to start the meeting by explaining why he felt he was being treated differently.  One co-worker told Plaintiff "I should kick your F ass right F now before I leave."[3]  One of the co-workers against whom Plaintiff had filed the internal complaint told Plaintiff that he hated Plaintiff's "F guts"[4] and should "fucking kick [his] ass."  The meeting lasted approximately one hour and fifteen minutes. At the end of the meeting, Plaintiff's supervisor informed everyone that the meeting was confidential and anyone leaving the room saying anything about what had happened in the meeting would be written up.

Assuming the truth of Plaintiff's allegations for purposes of this motion, the Court cannot say that this conduct was not sufficiently severe to be an adverse employment action.  Plaintiff alleges that his supervisor orchestrated the meeting and that he was threatened with physical harm.  The conduct alleged by Plaintiff was also humiliating.  Accordingly, Defendant is not entitled to summary judgment on Plaintiff's retaliation claim on the basis that he has failed to make a prima facie showing of an adverse employment action.

2.    Threats of Involuntary Separation

---

[3]This is a quote from Plaintiff's testimony.  It is not clear whether Plaintiff was substituting the letter "F" for an expletive used by his co-worker or whether the co-worker himself used the letter "F" a substitute for the expletive.

[4]See previous note.

Plaintiff alleges that he was twice threatened with involuntary separation in 2003. However, he concedes that Defendant never followed through on any attempt to separate Plaintiff from his employment.  Actions that are later rescinded such that they have no impact are not adverse employment actions.  See Fortner v. State of Kansas, 934 F.Supp. 1252 (D.Kan. 1996) (citing Raley v. Board of St. Mary's County Com'rs, 752 F.Supp. 1272, 1278, 1281 (D. Md. 1990)).  Accordingly, these threats of involuntary separation are not adverse employment actions for purposes of Plaintiff's retaliation claim.

3. Interference with Attempts to Obtain Promotion

An employer's failure to promote an employee is an adverse action for purposes of an employee's retaliation claim.  See Stover v. Martinez, 382 F.3d 1064 (10th Cir. 2004); Garcia v.Pueblo Country Club, 299 F.3d 1233, 1238 (10th Cir. 2002).  Plaintiff testified at his deposition that he asked Sammy Montano about applying for an available assistant supervisor position and was told he could not apply because of his injuries and restrictions.  Plaintiff applied in spite of Montano's admonition.  Plaintiff was interviewed for the promotion, but the promotion was given to one of Plaintiff's co-workers.  Plaintiff's testimony that he applied for a promotion and was not promoted is sufficient to meet his burden at the prima facie stage of showing an adverse employment action.

4. Constructive Discharge

An employee who is not formally discharged may still have been constructively discharged if the employee was forced to quit due to intolerable working conditions.  Bolden v. PRC Inc., 43 F.3d 545, 552 (10th Cir. 1994).  In determining whether a plaintiff voluntarily resigned or was constructively discharged, the Court must consider the totality of the circumstances under an

11

objective standard.  <u>Yearous v. Niobrara County Mem'l Hosp.</u>, 128 F.3d 1351, 1356 (10th Cir.

1997).          The factors the Court would normally consider include 1) whether the employee

was given some alternative to resignation; 2) whether the employee understood the nature of the

choice he was given; 3) whether the employee was given a reasonable time in which to choose;

and 4) whether he was permitted to select the effective date of resignation.  <u>Id.</u> "Constructive

discharge occurs when the employer by its illegal discriminatory acts has made working

conditions so difficult that a reasonable person in the employee's position would feel compelled to

resign."  <u>Sanchez</u>, 164 F.3d at 534.  "If an employee resigns of [his] own free will, even as a result

of the employer's actions, that employee will not be held to have been constructively discharged."

<u>Jeffries</u>, 147 F.3d at 1233; <u>Parker v. Bd. of Regents of Tulsa Junior College</u>, 981 F.2d 1159 (10th

Cir. 1992).  "Essentially, a plaintiff must show that [he] had no other choice but to quit."

<u>Sanchez</u>, 164 F.3d at 534.  The standard for constructive discharge is objective.  Therefore, the

issue is whether a reasonable person in Plaintiff's position would have viewed the working

conditions as intolerable.  <u>Jeffries</u>, 147 F.3d at 1233; <u>Derr v. Gulf Oil Corporation</u>, 796 F.2d 340,

343 (10th Cir. 1986).  The Plaintiff's subjective views of the working conditions are irrelevant.

<u>Sanchez</u>, 164 F.3d at 534.

    Plaintiff alleges that working conditions were so difficult that he was compelled to resign.

The circumstances alleged by Plaintiff to have created the intolerable conditions include (1) the

meeting in his supervisor's office that included his co-workers; (2) the fact that one of his co-

workers refused to work with him and other co-workers did not get along with him after the

meeting; (3) attempts by his supervisor to prevent him from applying for a promotion; (4) the

runaround he got from the personnel office when he did apply; (5) being laughed at by his

supervisor when he was taking an ability test for the promotion; (6) being threatened with

involuntary separation; (7) having his applications for transfer to other crews denied; (8) and

having his work scrutinized by his supervisor and his co-workers.

      In determining whether there is an issue of fact as to whether Plaintiff voluntarily resigned

or had no other choice but to quit, the question is not whether his working conditions were

difficult or unpleasant. See Yearous, 128 F.3d at 1357.  Rather, the question is whether Plaintiff,

at the time of his resignation, had the opportunity to make a free choice regarding his employment

relationship with the Defendant.  See Id.  The Supreme Court has stated that a constructive

discharge claim based on an intolerable work environment is a form of aggravated harassment that

is more than severe and pervasive.  Pennsylvania State Police v. Suders, 542 U.S. 129, 124 S. Ct.

2342, 2355 (2004).

      Assuming the truth of Plaintiff's facts and drawing all inferences in his favor, the Court

cannot conclude that the circumstances that Plaintiff argues compelled his resignation do not rise

to the level of aggravated harassment such that it created an intolerable work environment.  In

making this finding, the Court is not suggesting that Plaintiff has a strong claim for constructive

discharge.  I am simply saying that based on the record presented at this stage of the proceedings

and drawing all factual inferences in favor of the Plaintiff, I cannot conclude that a reasonable jury

could not find that this was a case of "harassment ratcheted up to the breaking point."  See

Suders, 124 S. Ct. at 2355.  Accordingly, constructive discharge may be an adverse action for

purposes of Plaintiff's retaliation claim although the Court will no doubt be called upon to

reconsider this issue at trial after Plaintiff rests his case.

Plaintiff has made a prima facie showing he engaged in protected activity and that he suffered adverse employment action.  Accordingly, Defendant is not entitled to summary judgment on Plaintiff's retaliation claim.

III     PLAINTIFF'S CLAIMS FOR BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

On September 26, 2005, the Court filed an Order directing Plaintiff to file a surreply on issues going to his contract claims.  The Court will defer ruling on summary judgment with regard to those claims until briefing is complete.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is hereby GRANTED IN PART with regard to Plaintiff's claim for national origin discrimination in Count I.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is hereby DENIED IN PART with regard to Plaintiff's claim for retaliation in Count II.

IT IS FINALLY ORDERED that the Court DEFERS ruling on summary judgment with respect to Plaintiff's claims in Counts V and VI pending further briefing as ordered.

_____
UNITED STATES DISTRICT JUDGE

14